HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

F.C. BLOXOM COMPANY,

      Plaintiff,

  v.

FIREMAN'S FUND INSURANCE COMPANY,

      Defendant.

CASE NO. C10-1603RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on two post-trial motions from Defendant Fireman's Fund Insurance Company ("Fireman's Fund") challenging aspects of the jury's verdict in favor of Plaintiff F.C. Bloxom Company ("Bloxom"). No party requested oral argument, and the court finds oral argument unnecessary. For the reasons stated below, the court GRANTS Fireman's Fund's motion (Dkt. # 140) for judgment as a matter of law on Bloxom's bad faith and CPA claims. The court DENIES Fireman's Fund's motion (Dkt. # 142) challenging the jury's decision to enhance the damages it awarded Bloxom on its Insurance Fair Conduct Act (RCW Ch. 48.30, "IFCA") claim.

## II. BACKGROUND

One day after it began deliberations at the end of a four-day trial, the jury returned a verdict in favor of Bloxom in this insurance dispute. Fireman's Fund had insured a 2008 shipment of Bloxom's nuts from the United States to a buyer in Venezuela, but

ORDER – 1

declined to pay any benefits after the shipment became permanently stranded in Venezuela after a series of misfortunes. The jury found in Bloxom's favor on its claims for breach of the insurance policy, bad faith, violation of the Washington Consumer Protection Act (RCW Ch. 19.86, "CPA"), and violation of IFCA. The jury entered duplicative awards of $86,189.40 on the breach-of-policy and IFCA claims, corresponding to the value of the lost shipment. The jury also entered duplicative awards of $7,835.40 on Bloxom's CPA and bad faith claims.[1]

The jury enhanced Bloxom's actual IFCA damages by $113,810.60, for a total IFCA award of $200,000. IFCA permits the increase of an award of actual damages "to an amount not to exceed three times the actual damages." RCW § 48.30.015(2).

Fireman's Fund's motions attack two aspects of the jury's verdict. Its first motion, invoking Fed. R. Civ. P. 50(a), requests that the court find that Bloxom did not, as a matter of law, prove damages arising from Fireman's Fund's bad faith or violation of the CPA. The effect of this motion would be to reduce the judgment by $7,835.40. In its second motion, Fireman's Fund contends that the law requires the court to treat the jury's enhanced IFCA damage award as an advisory verdict. Fireman's Fund asks the court to enter its own findings of fact and conclusions of law regarding enhanced damages, and to decline to enhance the IFCA award.

---

[1] The court designed the verdict form and jury instructions to ensure that the jury would base IFCA and breach-of-policy damages on the value of Bloxom's lost shipment, whereas it would base CPA and bad faith damages (if any) on the harm Fireman's Fund's claims handling caused. To help identify any inconsistencies in the jury's verdict, the court allowed the jury to reach verdicts on all four claims, with the expectation that if the jury followed the court's instructions, the IFCA damages award would be identical to and duplicative of the breach-of-policy damages, and the CPA damages award would be identical to and duplicative of the bad faith damages award. The jury's verdict demonstrates that it heeded the court's instructions. No party has objected to the court's entry of a judgment that removed the duplicative awards.

ORDER – 2

### III.  ANALYSIS

**A.    Fireman's Fund's Motion for Judgment as a Matter of Law**

In reviewing a motion for judgment as a matter of law,[2] the court does not weigh evidence or make credibility determinations. *EEOC v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009).  Instead, the court views the evidence in the light most favorable to the nonmoving party, taking all reasonable inferences in that party's favor. *Id.*  The court must uphold the jury's verdict if there was substantial evidence to sustain it. *Id.*  A court must not disturb a jury's compensatory damage award unless it is "grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork." *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 95 F.3d 1422, 1435 (9th Cir. 1996).

Fireman's Fund's motion regarding bad faith and CPA damages is the final chapter in the parties' dispute over the nature of bad faith damages.[3]  Through a series of pretrial rulings, the court separated damages arising from Fireman's Fund's denial of coverage from those arising from Fireman's Fund's claims handling.  The former category of damages was limited to the value of the shipment of nuts; the latter category excluded those damages.  Until shortly before trial, Bloxom had not articulated any damages arising solely from claims handling.  It contended that it could recover bad faith damages based on the value of the shipment of the nuts, a theory that the court rejected.  In an April 19 order, the court noted Bloxom's failure to articulate any other bad faith damages, but declined to dismiss the bad faith claim.  Apr. 19 ord. (Dkt. # 69) at 17-19.  It observed that Bloxom had spent money on an insurance industry expert to evaluate Fireman's Fund's claims handling, and pointed to Washington authority permitting the

---

[2] Fireman's Fund moved for judgment as a matter of law at the close of Bloxom's presentation of evidence at trial.  The court denied the motion, and Fireman's Fund has now renewed it. *See* Fed. R. Civ. P. 50(b).

[3] In the context of insurance claims handling, a CPA claim is largely identical to a bad faith claim. *See Overton v. Consolidated Ins. Co.*, 38 P.3d 322, 330 (Wash. 2002).  For the remainder of this order, the court will refer solely to Bloxom's bad faith claim.

ORDER – 3

recovery of that cost as damages for Fireman's Fund's bad faith. *Id.* at 18-19. When Fireman's Fund moved for reconsideration, Bloxom admitted that it had not, during discovery, disclosed the cost of the expert as an element of damages. It instead pointed to damages to the shipment arising from Bloxom's delay in making a coverage decision. In a May 9 order, the court permitted the bad faith claim to proceed to trial based on Bloxom's representations. May 9 ord. (Dkt. # 106) at 1-3.

When the court considered the bad faith claim again at the close of Bloxom's case at trial, Bloxom again pointed to damages arising from Fireman's Fund's delay, premised on the theory that but for that delay, Bloxom might have been able to sell the shipment of nuts for more than its Venezuelan buyer would have paid. Clark Decl. (Dkt. # 141) at 8-10. The court denied Fireman's Fund's motion.

Now, after the jury's verdict, Bloxom makes no reference to any of its previous theories of damage. It relies on a new theory: it suffered bad faith damages because both Bloxom CEO William Bloxom and a Bloxom trader spent substantial time dealing with Fireman's Fund and its botched claims handling. The court agrees that the testimony at trial supported a finding that dealing with Fireman's Fund's bad faith conduct was time-consuming. Bloxom now contends that because Mr. Bloxom and the trader could have spent that time pursuing other business, Bloxom suffered damage.

What Bloxom does not explain is how the jury could have properly decided that the value of its employees' lost time was $7,835.40. Bloxom points out that this figure is precisely the difference between the price its Venezuelan buyer had promised to pay for the shipment of nuts ($78,354.00) and the insured value of the shipment ($86,189.40). Bloxom's math is right, but math does not explain what the difference between the sales price and the insured value has to do with the value of Bloxom's lost time. The evidence at trial showed that, by design, the insured value of the shipment was 110% of its sales price. Tilstra Decl. (Dkt. # 148), Ex. B at 15. It is just as likely that the jury calculated

ORDER – 4

1   its bad faith award by taking 10% of the sales price. Again, however, there is no apparent
2   connection between that amount and the value of Bloxom's lost time. Bloxom presented
3   no evidence that would give the jury a basis to determine the value of any employee's
4   lost time. It presented no evidence of the amount Mr. Bloxom or the trader were paid and
5   no evidence of any particular business opportunity that Bloxom lost. In short, Bloxom
6   submitted no evidence that would allow the jury to quantify the damages that flowed
7   from the time its employees spent as a result of Fireman's Fund's bad faith.

   Because Bloxom provided no evidence that would support the jury's award of
$7,835.40 in bad faith damages, the jury's award could only have been the result of
speculation or guesswork. The evidence supports the inference that the jury believed that
Mr. Bloxom's lost time was worth something. Bloxom presented no evidence to permit
the jury to conclude how much it was worth. The amount of the jury's verdict strongly
suggests that it based its damage award for bad faith on a percentage of the value of
Bloxom's insurance claim. It had no proper basis to do so, because there was no
evidence linking Bloxom's lost time to the amount of its claim. There was, moreover, no
logical connection between Bloxom's lost time and the amount of its claim. Would
Bloxom have spent more or less time if the claim had been for $60,000 instead of about
$86,000? The court is reluctant to set aside any aspect of the jury's award, and indeed
commends the jury for attempting to acknowledge a proven harm despite the lack of
evidence to monetize that harm. Despite the deference afforded to a jury's compensatory
damage verdict, the court sets aside the bad faith damages award.

**B.     Fireman's Fund's Challenge to the Jury's IFCA Enhanced Damage Award**

   Fireman's Fund's second motion concerns a provision of IFCA that permits an
enhanced damage award of up to three times a plaintiff's actual damages.

> The superior court may, after finding that an insurer has acted unreasonably
> in denying a claim for coverage or payment of benefits or has violated a
> rule in subsection (5) of this section, increase the total award of damages to
> an amount not to exceed three times the actual damages.

ORDER – 5

RCW § 48.30.015(2).  There can be no question that the Washington legislature intended that a trial judge decide whether to enhance damages and by how much.

In conjunction with their proposed jury instructions, the parties raised disputes over whether the decision on enhanced IFCA damages in federal court was for the court or the jury.  The court did not resolve those disputes, but informed the parties that it would take the jury's verdict on enhanced damages, permitting the parties to argue in post-trial motions over whether the court should deem that aspect of the verdict to be merely advisory.  *See* Fed. R. Civ. P. 39(c).

The jury enhanced its award of actual damages by just under $114,000, for a total IFCA award of $200,000.  The jury could have awarded as much as $258,000 and remained within the treble damage cap.

Fireman's Fund now presents a two-step attack.  It contends that the court, not the jury, must decide whether to enhance IFCA damages.  Fireman's Fund further contends that the court should not enhance the IFCA damage award because its conduct was not sufficiently reprehensible.

### 1. The Seventh Amendment and Federal Rule of Civil Procedure 38(a) Require that a Jury Decide Whether to Enhance IFCA Damages.

Whereas no one could seriously contend that Washington's legislature intended that a jury apply IFCA's enhanced damages provision, Washington's legislature does not have to contend with the Seventh Amendment's civil jury trial guarantee:

> In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.

U.S. Const., Amend. VII.  The Seventh Amendment applies solely to federal courts.  *See Gasperini v. Center for the* Humanities, 518 U.S. 415, 418 (1996) ("[T]he Seventh Amendment . . . governs in federal court, but not in state court . . . ."); R.*J. Reynolds Tobacco Co. v. Shewry*, 423 F.3d 906, 924 (9th Cir. 2005) ("[T]he Seventh Amendment's

ORDER – 6

guarantee of the right to a civil trial by jury does not apply to the states and was not incorporated into the Fourteenth Amendment."); *Curtis v. Loether*, 415 U.S. 189, 192 n.6 (1974) ("The Court has not held that the right to jury trial in civil cases is an element of due process applicable to state courts through the Fourteenth Amendment."). Thus, whereas Washington's legislature can commit the decision to enhance IFCA damages to state court judges, this court cannot enhance damages unless the Seventh Amendment permits it.[4] Rule 38 of the Federal Rules of Civil Procedure dictates that the "right of trial by jury as declared by the Seventh Amendment to the Constitution—or as provided by a federal statute—is preserved to the parties inviolate." Fed. R. Civ. P. 38(a).

The first question before the court is whether a claim for enhanced IFCA damages falls within the scope of the Seventh Amendment. That question requires the court to determine if "(1) the nature of [plaintiff's] claim is analogous to a common law suit and (2) the remedy provided is legal (as opposed to equitable) in nature." *Thomas v. Oregon Fruit Prods. Co.*, 228 F.3d 991, 996 (9th Cir. 2000). In considering the nature of a state-law claim and remedy, the court looks only to federal law. *Simler v. Conner*, 372 U.S. 221, 222 (1963). An IFCA claim is analogous to a common law suit for bad faith denial of insurance coverage, or more generally analogous to a common law tort claim. It only requires proof that an insurer "unreasonably denied" insurance coverage or payments (RCW § 48.30.015(1)), much as a tort claim grounded in negligence often requires proof of unreasonable conduct. IFCA's damages remedy is legal, not equitable. Claims for monetary remedies are generally legal. *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 352 (1998). That general rule extends to discretionary monetary relief, including monetary relief intended as punishment. *Id.* at 352-53. It thus extends to IFCA's enhanced damages remedy.

---

[4] Fireman's Fund devoted much of its motion to a discussion of whether the Washington Constitution permits a judge, rather than a jury, to decide enhanced IFCA damages. That discussion is irrelevant.

ORDER – 7

1    Rule 38 requires federal courts to preserve the Seventh Amendment jury trial right
2    in *all* federal cases, even cases like this one involving only state law claims.  Rule 38 thus
3    squarely conflicts with IFCA's command that a judge, not a jury, decide whether to
4    enhance damages.  The venerable *Erie* doctrine guides courts in resolving conflicts
5    between federal rules and state law.  But, where a Federal Rule of Civil Procedure
6    applies, a court need "not wade into *Erie*'s murky waters unless the federal rule is
7    inapplicable or invalid."  *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 130
8    S. Ct. 1431, 1437 (2010).  A federal rule is valid unless it exceeds statutory authorization
9    or exceeds Congress's rulemaking power.  *Id.*

    Statutory authorization for the Federal Rules of Civil Procedure comes from the
Rules Enabling Act, 28 U.S.C. §§ 2071-74.  The Rules Enabling Act, in turn, permits the
Supreme Court to promulgate rules (subject to Congressional review), so long as they do
not "abridge, enlarge or modify any substantive right."  *Shady Grove*, 130 S. Ct. at 1442
(quoting 28 U.S.C. § 2072(b)).  To comply with that mandate, civil rules must be
"procedural," not substantive.  *Id.*  A rule is not substantive merely because it affects a
litigant's substantive rights.  *Id.* (noting that most procedural rules impact substantive
rights).  What matters is whether the rule regulates "the manner and means by which
litigants' rights are enforced," as opposed to modifying the rules of decision by which the
court adjudicates those rights.  *Id.* (internal citation omitted).  The Supreme Court has
never found that a Federal Rule of Civil Procedure is invalid because it is substantive
rather than procedural.  *Id.* ("[W]e have rejected every statutory challenge to a Federal
Rule that has come before us.").

    Rule 38 is procedural.  By its terms, it only governs whether a judge or jury
decides questions.  It does not dictate the substantive standards that a judge or a jury
applies when deciding those questions; those standards are matters of state law, at least
for state-law claims.  *See*, *e.g.*, *Gasperini*, 518 U.S. at 429-30 (applying New York

ORDER – 8

standards for determining whether punitive damage award is excessive); *Coughlin v. Tailhook Ass'n*, 112 F.3d 1052, 1055-56 (9th Cir. 1997) (applying Nevada standards for determining punitive damages). An application of Rule 38 in this case means that the court correctly submitted the issue of enhanced damages to the jury.

So far as the court is aware, the Ninth Circuit has not explicitly considered whether the Seventh Amendment and Rule 38 supplant state laws that commit decisions to a judge rather than a jury. Within this District, one judge has ruled that a jury must decide a claim for enhanced IFCA damages. *Northwestern Mut. Life Ins. Co. v. Koch*, 771 F. Supp. 2d 1253, 1256-57 (W.D. Wash. 2009) (Settle, J.). The *Koch* court reached its conclusion for many of the same reasons that underlie this court's decision today.

Outside of the Ninth Circuit, at least three federal courts of appeals have applied Rule 38 to supplant state laws that commit decisions to a judge rather than a jury. In *Jones v. United Parcel Service, Inc.*, 674 F.3d 1187, 1202 (10th Cir. 2012), the court considered a Kansas law that permitted the jury to decide whether to award punitive damages, but required the court to decide the amount of punitive damages. The district court, applying Rule 38 and the Seventh Amendment, nonetheless allowed the jury to decide the amount of punitive damages. The *Jones* court affirmed. *Id.* at 1206. In *Kampa v. White Consol. Indus., Inc.*, 115 F.3d 585, 586-87 (8th Cir. 1997), the court reversed a district court that followed a Minnesota law requiring a judge sitting without a jury to decide certain civil rights claims. The court in *Klingler v. State Farm Mut. Auto. Ins. Co.*, 115 F.3d 230, 235-36 (3d Cir. 1997), upheld a jury's punitive damages award in an insurance bad faith case even though Pennsylvania law required the court to decide punitive damages. A few other federal courts of appeals have suggested that they would reach the same result if confronted with a state statute mandating that a judge decide claims within the scope of the Seventh Amendment. *See*, *e.g.*, *McEwen v. Delta Air Lines, Inc.*, 919 F.2d 58, 60 (7th Cir. 1990) (noting, in *dicta*, that "*Erie* does not require a

ORDER – 9

federal court to employ the state's rules on the allocation of issues between judge and jury," and that "[i]f Illinois assigned all retaliatory discharge cases to judges, federal courts would still need to empanel juries, given the [S]*eventh* [A]*mendment*"); *Lewis v. Sears, Roebuck & Company*, 845 F.2d 624, 628 (6th Cir. 1988) ("[A]s the Supreme Court has often held in diversity and pendent jurisdiction cases: while the substantive dimension of a claim finds its source in state law, . . . , the allocation of functions between judge and jury must be made by recourse to federal law."). Although none of these decisions bind this court, the court finds them consistent with the Supreme Court and Ninth Circuit precedent it has already applied.

For all of these reasons, the court concludes that the Seventh Amendment and Rule 38 require the jury to determine any IFCA enhanced damage award. The court declines to treat the jury's verdict in this case as advisory.

### 2. If the Court Had Decided Bloxom's Claim for Enhanced IFCA Damages, It Would Have Awarded More than the Jury Did.

Although the jury properly decided Bloxom's claim for enhanced IFCA damages, the court independently holds that if it had decided that claim, it would have awarded more than the jury did. To reach that conclusion, the court first rejects Fireman's Fund's argument that IFCA itself requires proof of reprehensible conduct before enhancing damages. The court then rejects Fireman's Fund's belated argument that the Constitution requires proof of reprehensible conduct before enhancing damages.

By its plain language, IFCA's enhanced damages remedy has only one prerequisite: that an insurer "acted unreasonably in denying a claim for coverage or payment of benefits" or violated certain insurance regulations. RCW § 48.30.015(2). No one reading the statute could find an indication that the Washington legislature intended to require proof of more reprehensible conduct. Instead, the legislature left it to the discretion of superior court judges to decide how much to enhance damages. No party has pointed to Washington precedent that would require a higher degree of reprehensible

ORDER – 10

conduct. Fireman's Fund notes that this court has speculated that it would look to the "upper limits of unreasonable conduct, rather than mere technical [IFCA] violations" before trebling damages. *Trident Seafoods Corp. v. Commonwealth Ins. Co.*, 850 F. Supp. 2d 1189, 1206 (W.D. Wash. 2012). That statement was *dicta*; the court's ruling in *Trident* was merely that the insurer could present a constitutional challenge to IFCA's enhanced damages provision. Fireman's Fund correctly acknowledges Washington's traditional hostility to punitive damages, but cites no Washington precedent that would limit the legislature's power to permit treble damages for unreasonable conduct.

At trial, Bloxom proposed giving the jury a version of the Ninth Circuit Model Jury Instruction that applies to punitive damages. That instruction declares that punitive damages are appropriate only for conduct that is "malicious, oppressive, or in reckless disregard of the plaintiff's rights." 9th Cir. Model Civ. Jury Instruct. No. 5.5. The parties ignored, however, that the commentary to that instruction provides that "punitive damages claims arising under state law are subject to state law standards for recovery which should be reflected in a modified jury instruction." *Id.*

The court initially considered an IFCA enhanced damages instruction that relied solely on the plain language of RCW § 48.30.015(2). The court was concerned, however, that the jury's award would be subject to challenge if the court gave it no instruction as to what factors might guide its discretion to enhance an IFCA award. The court considered what factors might guide its discretion if it were deciding the enhanced damages question and added two of those factors to the jury instruction it proposed:

> In considering whether or not to enhance Insurance Fair Conduct Act damages, you must consider whether Bloxom has proven that an enhanced award is necessary to punish Fireman's Fund for its conduct or to deter Fireman's Fund from engaging in similar conduct in the future.

Jury Instruct. No. 19 (Dkt. # 123). Bloxom objected to that sentence because it went beyond IFCA's plain language. The court asked Fireman's Fund whether it would prefer an instruction with that sentence or with the sentence removed. Fireman's Fund chose to

ORDER – 11

keep the sentence. Dkt. # 144 at 43. The next sentence of the jury instruction stated: "You may award whatever enhanced damages you believe are appropriate, [subject to the treble-damage limit]." Jury Instruct. No. 19 (Dkt. # 123).

Now, Fireman's Fund returns to the argument that the court should require more than IFCA requires to impose enhanced damages. In doing so, it refers to the enhanced damage remedy as "punitive damages."

The court has consistently used the term "enhanced damages" to describe the treble-damages remedy that IFCA provides. The parties have referred to the same remedy as "punitive damages." The court avoided that term in jury instructions not because it is necessarily inaccurate, but because it feared the jury would associate it, for better or worse, with the unbounded punitive damages for tort claims that occasionally capture popular media attention.

The court continues to use the term "enhanced damages" not only for consistency, but because the remedy IFCA provides is not necessarily punitive. Laws that permit the application of a damage multiplier existed even in ancient times; the notion of "punitive damages . . . untethered to strict numerical multipliers" is a relatively recent innovation. *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 491 (2008). Laws like IFCA that provide a treble damages remedy typically fall somewhere on a "spectrum between purely compensatory and strictly punitive awards." *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 405 (2003). Depending on the statutory scheme of which they are a part, treble damage provisions may be remedial or punitive. *Id.* at 405-06 (reviewing treble damage remedies for various federal laws); *see also Cook County v. United States ex rel. Chandler*, 538 U.S. 119, 130 ("[T]reble damages have a compensatory side, serving remedial purposes in addition to punitive objectives.").

ORDER – 12

The court does not decide whether IFCA's enhanced damages remedy is punitive, remedial, or both. It does so in part because no party has provided any precedent, legislative history, or any other authority that would help the court make that assessment.

IFCA's remedy may well be purely compensatory. The court has already noted, in discussing Bloxom's bad-faith damages, that misconduct by insurers has costs that are difficult to quantify. Before it sued, Bloxom expended time and resources trying to force Fireman's Fund to cover its loss. Bloxom, like most insureds, did not keep a ledger that would quantify how much monetary loss it suffered as a result of that effort. Still, Bloxom, like most insureds, could lay claim to compensatory damages beyond the amount that its insurer should have paid under its policy. IFCA's enhanced damages remedy may simply provide a compensatory remedy for these difficult-to-quantify harms.

It is also possible, however, that the IFCA enhanced damages remedy is punitive. The legislature may have believed it inappropriate to allow an insurer to act unreasonably toward its insured and escape with a verdict that does no more than award the insured his policy benefits. In instructing the jury, the court offered guidance that treated the IFCA enhanced damages remedy as at least partially punitive. It did so with Fireman's Fund's consent, over Bloxom's objection.

Punitive or not, IFCA's provision for enhanced damages on a showing of unreasonable conduct does not run afoul of any law. In its reply brief, Fireman's Fund argued for the first time that it would violate the United States Constitution to award enhanced damages on a bare showing of unreasonable conduct.[5]

To comport with the Due Process Clause of the Fourteenth Amendment, state-law punitive damage awards are subject to review for excessiveness. *BMW of North*

---

[5] Fireman's Fund did not notify the Washington Attorney General that it was challenging the constitutionality of IFCA's enhanced damages provision. *See* Fed. R. Civ. P. 5.1(a). In light of its disposition today, the court need not give notice to the Attorney General.

ORDER – 13

*America, Inc. v. Gore*, 517 U.S. 559, 569 (1996).  Three considerations guide the excessiveness inquiry:

> (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.

*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003).

IFCA survives constitutional scrutiny by virtue of its treble damages limit.  So far as the court is aware, no court has ever struck down a state treble damages provision on Due Process grounds.  In light of the treble damages limit, unreasonable conduct is a sufficient "degree of reprehensibility" for enhancing IFCA damages.  Again, the court is aware of no authority prohibiting the imposition of treble damages on a showing of unreasonable conduct.[6]

For these reasons, the court concludes that IFCA's plain language imposes the proper degree of reprehensibility for imposition of enhanced damages: an "unreasonable" denial of coverage.

Adopting the standards it discussed above as its conclusions of law, the court enters the following provisional findings of fact.  Had the court treated the jury's enhanced damages verdict as advisory, the court would have awarded more enhanced damages than the jury awarded: a total of $210,000.  Bloxom presented ample evidence at trial of Fireman's Fund's unreasonable conduct.  Fireman's Fund initially entrusted claims handling to a third party, which ensured that it had little of the information it needed to properly assess Bloxom's claim.  After that, Fireman's Fund essentially abandoned Bloxom's claim for months.  When Bloxom finally recaptured Fireman's Fund's attention, the insurer pointed to a host of inapposite and improperly interpreted

---

[6] Fireman's Fund cites *Smith v. Wade*, 461 U.S. 30, 56 (1961), for the proposition that punitive damages always require a showing of at least recklessness.  *Smith* merely sets the standard for awarding punitive damages on 42 U.S.C. § 1983 claims.  Nothing in *Smith* prevents states from imposing punitive damages on a lesser showing of misconduct.

ORDER – 14

policy provisions to avoid coverage.  Fireman's Fund stretched a simple claims adjustment process into one that spanned more than a year.  It did so in a way that demonstrated that it was more interested in defending its refusal to cover Bloxom's claim than in properly investigating the factual and legal basis for that denial.  To permit Fireman's Fund to escape this litigation with a payment that covered only Bloxom's actual damages would be unjust.  That payment would not compensate Bloxom for the extra burden it carried because of Fireman's Fund's unreasonable claims handling.  In addition, the unenhanced award that Fireman's Fund requests would permit it, at the end of a claims-handling process that it greatly extended as a result of its unreasonable conduct, and at the end of a litigation that it lost, to pay no more than it should have paid almost three years ago.  The court will not permit that result.  The court provisionally finds that a total IFCA award of $210,000 is appropriate in this case.

### IV.  CONCLUSION

For the reasons stated above, the court GRANTS Fireman's Fund's motion (Dkt. # 140) for judgment as a matter of law on Bloxom's bad faith and CPA claim.  The court DENIES Fireman's Fund's motion to treat the jury's enhanced IFCA award as an advisory verdict.  Dkt. # 142.  The court will direct the clerk to enter an amended judgment reflecting this order after it resolves Bloxom's pending motion for attorney fees and costs.

DATED this 30th day of November, 2012.

_Richard A. Jones_
The Honorable Richard A. Jones
United States District Court Judge

ORDER – 15